[No. 15768.    Department Two.    August 18, 1920.]

W. H. FISHER, *Respondent,* v. SCHWABACHER HARDWARE COMPANY, *Appellant,* SEATTLE TRUST COMPANY, *Defendant.*[1]

SUBROGATION (1)—SURETIES OR GUARANTORS. Where a co-guarantor of the debts of an insolvent corporation for the year 1914, died and his estate was compelled to pay in full the judgment recovered on the guaranty, the estate or its successor in interest might enforce contribution from the surviving guarantor; and hence is entitled to be subrogated to the rights of the judgment creditor in and to dividends from the bankrupt estate which had by agreement with the surviving guarantor been all applied upon an additional guaranty of the insolvent debts for the subsequent year to which the estate was not a party or liable thereon.

JUDGMENT (70, 109)—ENTRY—TIME FOR ENTRY—VACATION—IRREGULARITIES. Where a motion for a new trial was granted unless plaintiff remitted $2,000 from the verdict, the clerk's entry of judgment on the verdict after denial of motion for judgment notwithstanding the verdict, although not immediately, as required by Rem. Code, § 431, was proper, the remission of $2,000 being thereafter entered as a credit on the execution docket; and it was error to vacate it as being entered contrary to instruction.

Appeal from a judgment of the superior court for King county, Hall, J., entered July 29, 1919, upon findings in favor of the plaintiff, in an action for equitable relief, tried to the court. Affirmed.

*Trefethen & Findley,* for appellant.

*Wright, Kelleher, Allen & Hilen,* for respondent.

[1]Reported in 191 Pac. 1104.

TOLMAN, J.—For several years prior to 1914, the Seldovia Salmon Company had been operating a canning plant in Alaska, and selling its product in the city of Seattle. Though a corporation, its affairs were carried on like a partnership, by Julius Redelsheimer and Benjamin Moyses, each owning an equal number of shares of its capital stock, and they two owning all of its stock except two shares held by a third person merely to qualify him to act as trustee of the corporation.

The Schwabacher Hardware Company, appellant here, had been extending large credits to the salmon company on open and running account, and in 1914 Redelsheimer and Moyses each gave a separate and personal guaranty of such open account in the sum of $5,000. Redelsheimer died soon after the close of the 1914 fish packing season, and the salmon company was managed and operated by Moyses during the season of 1915, he then giving an additional personal guaranty covering the 1915 account of the Schwabacher Hardware Company, in which guaranty the estate of Julius Redelsheimer did not join. In the fall of 1915, the Schwabacher Hardware Company began an action against the Seldovia Salmon Company, the estate of Julius Redelsheimer, deceased, and Benjamin Moyses to collect the 1914 account guaranteed by the two officers of the salmon company, which resulted in a judgment entered December 2, 1915, against the salmon company, Moyses and the estate of Julius Redelsheimer, in the principal sum of $5,000, but for some reason which does not clearly appear, the judgment was made to draw interest for a greater length of time as against the salmon company and Moyses, so that the Redelsheimer estate was, in fact, liable on that judgment for about $250 less than was the salmon company and Moyses.

Thereafter, on December 15, 1915, the salmon company was adjudged a bankrupt, and the Schwabacher Hardware Company presented and proved two claims against the bankrupt estate, one on the judgment for $5,647.50, and a further claim for $4,428.34, representing the 1915 book account, which had been guaranteed by Moyses and not by Redelsheimer or his estate. Thereafter there were two dividends declared and paid in the bankruptcy proceedings, aggregating a little more than 26 per cent of the face of the claims as filed and allowed. By an agreement between Moyses and the Schwabacher Hardware Company, the latter applied the whole of these dividends upon both claims, when received, toward the payment of the 1915 account, and no part of either dividend was credited upon the judgment against the Redelsheimer estate. It appears also that, at the time Moyses agreed that the dividends upon both claims in bankruptcy should be so applied, there was also an understanding between himself and the hardware company that Moyses should turn over to the hardware company certain stock of the Columbia Salmon Company, a corporation, as part payment, and that thereafter the hardware company, so far as Moyses was concerned, would look to certain real estate belonging to Moyses, upon which this and other judgments against him were liens, for the satisfaction of the balance of its claim represented by the judgment.

Later the hardware company began proceedings in the matter of the estate of Julius Redelsheimer, looking to the removal of the executrix on the ground that she was not adequately performing her duties, and by stipulation and a decree thereafter entered by the court thereon, the claim against the Redelsheimer estate was settled by the payment by the executrix to

the hardware company of the sum of $4,199.17, that being the amount due on the judgment against the Redelsheimer estate after crediting the dividends declared upon the judgment claim in the bankruptcy proceedings, and in and by the stipulation and the decree it was provided, in effect, that to the extent of the payment so made, the Redelsheimer estate should be subrogated *pro rata* to any and all liens and rights existing in favor of the hardware company against the estate and property of any other judgment debtor in said judgment, and particularly Benjamin Moyses, then deceased, and his estate.

Benjamin Moyses having died, it was found advisable that the lands theretofore belonging to him, upon which the judgment was a lien, should be exchanged for other lands, and it was agreed that the title to the lands thus acquired should be taken in the name of the Seattle Trust Company, as trustee, to sell and dispose of the proceeds according to the priority of the several judgment liens against the Moyses lands so exchanged.

Respondent, Fisher, having succeeded to the interest of the Redelsheimer estate, brought this action against the trust company, the hardware company, and the executors, and all those beneficially interested in the Moyses estate, to establish the right of the trust company to sell such real estate, require it to do so, determine the amount due the hardware company on its judgment against Moyses, and to direct the proper disbursal of the funds to be realized from such sale. The trial court made an interlocutory decree, directing the sale of the lands, and that being done, supplemental issues were framed in which respondent claimed all of the fund realized by the trustee from the sale of the land, except a very small amount which it was conceded should be paid to the hardware company.

The trial court found that, under the stipulation and decree entered in the proceedings instituted by the hardware company in the probate of the Redelsheimer estate, the Redelsheimer estate had paid to the hardware company $4,199.17 in full of the judgment against it, and in consideration of such payment, the hardware company had assigned to the Redelsheimer estate a proportionate interest in the judgment against Moyses, this finding following the provisions of the stipulation and decree in the probate proceedings hereinbefore referred to; and the court further found that the respondent, as successor in interest of the Redelsheimer estate, was the owner of a *pro rata* interest in the judgment of 4199.17/4555.77 thereof, and that the hardware company was the owner of the remaining 356.60/4555.77 of the judgment, and directed that the portion of the funds applicable to the payment of this judgment should be distributed, $1,856.09 to respondent, and $157.62 to the hardware company. From a decree based on that finding, this appeal is taken.

It seems to be appellant's contention that, notwithstanding the stipulation and decree in the probate proceedings, it may now enforce the oral agreement between itself and Moyses and credit all of the dividends paid through the bankruptcy court on the claim represented by the judgment, on the 1915 account, upon which the Redelsheimer estate was not liable, leaving the original judgment unaffected thereby. We think this contention untenable, because, while the original debt was that of the salmon company, both Redelsheimer and Moyses were guarantors thereof, and, as between themselves, either one paying the whole debt, or any proportion thereof greater than one-half, might enforce contribution from the other; consequently any agreement applying the dividends on the claim repre-

sented by the judgment to the payment of the open account would be effective only as against the parties to such agreement. The Redelsheimer estate, not being a party thereto, was not bound thereby, and although by the judgment made liable for the debt, it might, if called upon to pay such judgment, in whole or in part, look to the salmon company, so far as it had assets, to be made whole, and after such assets had been exhausted, it might claim contribution from Moyses, its co-guarantor, to an extent which would equalize the liability between them. This situation was recognized by the decree in the probate proceedings, and no appeal having been taken from that decree, it became final and binding upon the parties thereto, both the hardware company and the Redelsheimer estate, and respondent, as the successor in interest of the Redelsheimer estate, may claim the benefit thereof

The judgment of the trial court is affirmed.

HOLCOMB, C. J., BRIDGES, FULLERTON, and MOUNT, JJ., concur.